UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON
CIVIL ACTIONS NO.:

**TONI AKERS**, on behalf of himself and on behalf of all others similarly situated,

                                                                           PLAINTIFF

vs.

**GOVERNMENT EMPLOYEES INSURANCE COMPANY**, a foreign insurance corporation,

                                                                           DEFENDANT

## CLASS ACTION COMPLAINT

Plaintiff **TONI AKERS**, individually and on behalf of all other persons similarly situated, sues Defendant, **GOVERNMENT EMPLOYEES INSURANCE COMPANY** ("Defendant" or "GEICO"), respectfully representing as follows:

### JURISDICTION

1.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because (a) the Plaintiff is a member of the putative classes defined herein, each of which consists of at least 100 members, and she and the Defendant are citizens of different states; (b) the amount-in-controversy exceeds $5 million dollars exclusive of interest and costs; and (c) none of the 28 U.S.C. § 1332 exceptions apply to this claim.

### VENUE

2.    Plaintiff alleges that venue in this Honorable Court is proper pursuant to 28 U.S.C. 1391(a), because a substantial portion of the acts and course of conduct giving rise to the claims

alleged occurred within the district and the Defendant is subject to personal jurisdiction in this district.

## NATURE OF THE ACTION

3. This is a Kentucky class action lawsuit by Plaintiff, individually, and on behalf of a putative class of persons (the "Class"), who were insureds under a GEICO automobile policy (the "Policy") issued for private passenger auto physical damage, pursuant to which Defendant was required to pay the cost to repair an insured vehicle up to the "Actual Cash Value" ("ACV") of the vehicle.

4. Defendant GEICO is one of the largest passenger auto insurance carriers operating in the State of Kentucky. One of the coverages GEICO sells to consumers is comprehensive and collision coverage. GEICO systematically and uniformly underpaid Plaintiffs and thousands of other putative Class Members amounts owed to its insureds who suffered the total loss of a vehicle insured with comprehensive and collision coverage.

5. Insureds, such as Plaintiff and the putative Class Members, pay a premium in exchange for GEICO's promise to repair any damage to an insured vehicle caused by a covered peril.

6. GEICO's Policy gives it the option to either pay for the property damage in money or to repair or replace the insured property. Once GEICO makes an election not to repair or replace the damaged property, it is bound by that election and "cannot by its own action revoke it." 12A Couch on Ins. § 176:23

7. GEICO's obligation to pay for damage is not limitless; rather, it is limited (or capped) to the ACV of the insured vehicle. For example, GEICO is not obligated to spend $20,000 to repair extensive damage to a vehicle that is only worth $5,000. Under such circumstances, where

the cost to repair damage exceeds the value of the vehicle (less retained value), the vehicle is considered a "total loss."

8.  When GEICO determines that an insured vehicle is a "total loss," it always (as a general business practice) invokes its limitation of liability and elects to pay ACV in a cash payment to the insured.

9.  ACV is defined by both the Policy and by Kentucky law as the *replacement cost* of the auto, less depreciation or betterment. *See Jouve v. State Farm Fire & Cas. Co.*, 74 So. 3d 220, 229 (La. Ct. App. 2011) ("Under Kentucky law, actual cash value is equal to replacement cost value less depreciation.").

10. Additionally, when an insurer elects to make a cash settlement instead of repairing an insured vehicle, Kentucky requires that cash settlement to include "all applicable taxes, license fees . . ., and other fees incident to transfer of evidence of ownership of a comparable motor vehicle." 806 KAR 12:095.

11. To replace a vehicle with a "comparable motor vehicle," an insured is required to pay certain fees to properly register and title a motor vehicle. Upon information and belief, those fees include a $17.00 title fee, and $6.00 clerk fee, a $21.00 plate fee, and a $22.00 lien fee (when applicable), totalling at least $66.00 in fees (collectively, "Title and Registration Fees"). A vehicle will not be legally transferred until the new owner makes proper application for title and pays the concomitant fees.

12. Despite these reasonably necessary replacement fees, GEICO paid Plaintiff and other class members only $18.00 in state and regulatory fees. GEICO's refusal to pay the full cost of replacing a vehicle in Kentucky after a total loss is a violation of both the terms of the Policy and Kenntucky law.

13. This lawsuit is brought on behalf of Plaintiffs and on behalf of all other similarly situated insureds who have suffered damages due to the Defendant's practice of refusing to pay reasonably necessary replacement fees, such as Title and Registration Fees, to first-party total loss insureds on physical damage policies containing comprehensive and collision coverages.

## STATEMENT OF FACTS

14. GEICO's Policy covered Plaintiff and Class Members based on standardized policy language with identical material terms for collision and comprehensive coverage on first-party total loss physical damage claims.

**A.  The Policy Required GEICO To Pay Actual Cash Value, Including Reasonably Necessary Replacement Fees.**

15. The Policy promises to pay for "loss" to a covered auto. Relating to physical damage collision coverage, the Policy specifically provide:

> We will pay for *collision loss* to the *owned* or *non-owned auto* for the amount of each *loss* less the applicable deductible.

16. The Policy provide as follows relating to physical damage comprehensive coverage:

> We will pay for each *loss* less the applicable deductible caused other than by *collision* to the *owned* or *non-owned auto*.

17. The Policy explains that GEICO will pay for "loss" by electing to either: "(a) pay for the loss; or (b) repair or replace the damaged or stolen property."

18. In the same section, under a provision entitled "LIMIT OF LIABILITY," the Policy state, in pertinent part:

> The limit of our liability for loss:'
>
> 1. Is the actual cash value of the property at the time of the loss;
>
> Actual cash value of property will be determined at the time of the loss and will include an adjustment for depreciation/betterment and for the physical condition of the property.

19. "Loss" is defined under the Policy as "direct and accidental loss of or damage to (a) the auto, including its equipment; or (b) other insured property."

20. "Actual cash value" is defined as "the replacement cost of the auto or property less depreciation or betterment."

21. Taken together, these Policy provisions obligate Defendant to pay for "loss" (i.e., damage to the auto) by either paying for the "loss" (i.e., damage) in cash or by actually "repairing or replacing" the vehicle. However, if the cost of paying for the loss (i.e. damage) or the cost of repairing or replacing the vehicle exceeds the value of the vehicle, Defendant is entitled under the limitation of liability to elect to pay the "actual cash value" of the vehicle (i.e., replacement cost, less depreciation).

22. GEICO violated the Policy provisions requiring that it pay "loss" on comprehensive and collision claims. "Loss" expressly includes actual cash value pursuant to the Policy's Limit of Liability provision, which provides that the most GEICO will pay "for loss . . . [i]s the actual cash value of the property at the time of the loss." The Policy defines ACV as "the replacement cost of the auto or property less depreciation or betterment." Thus, the Policy requires GEICO to pay for "loss" capped at the ACV of the vehicle. When GEICO elects to pay ACV rather than the higher amount to repair or replace a total-loss vehicle, GEICO's contractual obligation to pay for loss becomes an obligations to pay ACV.

23. ACV is the only "loss" provision in the Policy that includes and permits deductions for depreciation or betterment. GEICO deducts for depreciation and betterment on total loss claims, which evidences that GEICO pays ACV on the total loss claims. GEICO trains its adjusters that it pays ACV on total losses, which permits the reduction in coverage for depreciation and betterment. GEICO's auto damage adjuster's handbook instructs its adjusters that GEICO pays

ACV on total loss claims. GEICO's general practice is to pay sales tax on first-party total loss claims because they are replacement costs and thus part of ACV.

24. The Policy contains no provision setting out a difference in coverage based on whether a total loss vehicle is replaced after the total loss. The Policy contains no provision setting out a difference in coverage based on whether a total loss vehicle is leased, owned, or financed. The Policy imposes no condition that an insured replace a total-loss vehicle to receive full coverage under the Policy. The Policy imposes no condition that an insured seek reimbursement for taxes and fees before receiving full coverage under the Policy.

25. The Policies do not exclude from coverage the reasonably necessary Title and Registration Fees.

26. The Policies incorporate the mandates of Kentucky law:

CHOICE OF LAW

The policy and any amendment(s) and endorsement(s) are to be interpreted pursuant to the laws of the state of Kentucky.

27. GEICO defines "total loss" on its website as "Property that has sustained damage so extensive that repairing it is not reasonable. A vehicle is considered a total loss if it cannot be repaired safely, if repairing the vehicle is not economically practical, or if state regulations require [GEICO] to consider it a total loss." GEICO.COM; Glossary of Insurance Terms and Definitions, https://www.geico.com/information/insurance-terms/ (last visited January 15, 2021).

28. GEICO represents on its website that, if a car it "totaled," GEICO "will only pay [its insured] the **actual cash value** of [their] car, minus the deductible, factoring in depreciation." GEICO.com, Common Myths About Auto Insurance, https://www.geico.com/information/life-stages/on-your-own/auto-insurance-myths/ (last visited January 14, 2021) (emphasis added).

29. GEICO, as a general business practice, elects to pay "actual cash value" every time it determines a vehicle to have sustained a "total loss."

30. GEICO represents, both through its Policies and through statements on its website, that "actual cash value" means "replacement cost, less depreciation." GEICO.COM; Glossary of Insurance Terms and Definitions, https://www.geico.com/information/insurance-terms/ (last visited January 15, 2021).

**B.  The Policies and Kentucky Law Required GEICO to Pay Title Transfer Handling Fees and License Plate Transfer Fees on Total Loss Claims.**

31. ACV replacement costs including all Title and Registration Fees that are incident to transfer of ownership and must have been paid by GEICO under the Policy and Kentucky law.

32. Throughout the class period, Kentucky prohibited the purchase, transfer, or lease of a vehicle without properly registering and titling the vehicle with the State. *See* KRS § 186.020

33. Upon information and belief, throughout the class period, Kentucky prohibited the purchase, transfer, or lease of a private passenger vehicle without the payment of a minimum a $17.00 title fee, and $6.00 clerk fee, a $21.00 plate fee, and a $22.00 lien fee (when applicable), totaling at least $66.00 in fees.

**C.  GEICO Breached Its Policy with Plaintiff by Failing to Pay Reasonably Necessary Replacement Costs on His Total Loss Claim.**

34. Plaintiff entered a Kentucky automobile policy agreement to be insured by GEICO under terms contained in the "form" Policy.

35. The Policy provided physical damage coverage for Plaintiff's 2013 Toyota Corolla LE Sedan, VIN: 2T1BU4EE3DC112196 ("Plaintiff's Vehicle").

36. Plaintiff's Vehicle was titled and registered in accordance with Kentucky law.

37. Plaintiff paid all applicable sales tax, Title and Registration Fees for the total loss vehicle prior to the loss.

38. On or about June 12, 2018, Plaintiff was involved in an auto collision while operating Plaintiff's Vehicle. Plaintiff submitted a claim to GEICO for the Plaintiff's Vehicle physical damage caused by the collision, claim number 0603795880101023-01.

39. Because the cost to repair exceeded the cost to replace the vehicle, GEICO determined that Plaintiff's Vehicle was a "total loss" and elected pursuant to the Policy to pay the ACV of the vehicle instead of the higher cost to repair the vehicle.

40. GEICO determined Plaintiff's Vehicle had a total value of $10,135.72. *See* Exhibit A (Total Loss Settlement Explanation).

41. GEICO added $48.00 for a "condition adjustment," $573.72 and for applicable taxes.

42. GEICO subtracted the deductible of $500.00.

43. GEICO paid Plaintiff $18.00 for "State and Local Regulatory Fees" because such fees are "replacement costs" owed as part of ACV, and because Kentucky law requires payment of all necessary fees. However, GEICO significantly underpaid the amount of State and Local Regulatory Fees owed under the Policy and under Nebraska law.

44. Plaintiff replaced his total-loss vehicle with a replacement vehicle. The cost to replace his vehicle included all reasonably necessary replacement costs, such as all title, registration, and transfer fees.

45. GEICO breached its Policy by failing to pay all reasonably necessary replacement costs to Plaintiff, including the title transfer handling fee and license plate transfer fee.

46. Plaintiff was damaged by GEICO's breach.

**D.  GEICO Breached Its Policies with All Class Members by Failing to Pay the Replacement Costs on Their Total Loss Claims.**

47. Each Class Member was insured by GEICO for total losses under the same material terms as the Policy insuring Plaintiff.

48. Like Plaintiff, each Class Member submitted a claim to GEICO during the class period, which GEICO determined was a covered total loss.

49. GEICO breached its insurance policy with each Class Member by failing to pay all reasonably necessary replacement costs on the Class Member's total loss claim.

50. Plaintiff satisfied all terms of the Policies and all conditions precedent, such that their insurance policies were in effect and operational at the time of the accident, and their total loss claims were deemed covered claims by GEICO.

**E.     GEICO's Breaches Were Committed in Bad Faith.**

51. Plaintiff and Class Members are entitled to expenses of litigation, including all attorneys' fees and costs pursuant to K.R.S. Stat. § 304.12-230.

52. GEICO has acted in bad faith and GEICO's failure to pay full ACV replacement costs was arbitrary, capricious, or without probable cause. GEICO has caused Plaintiff and Class Members unnecessary trouble and expense by GEICO's failure to comply with the clear requirements of the Policy and Kentucky law.

53. There is no legal justification for GEICO's conduct in failing to pay full ACV replacement costs on Kentucky first-party total loss claims.

## CLASS ACTION ALLEGATIONS

54. Plaintiff brings this action on behalf of himself and as a class of all others similarly situated. This action is brought and is properly maintained as a class action pursuant Fed. R. Civ. P. 23(b)(1), (b)(2), (b)(3) and/or (c)(4), as may deemed appropriate by the Court.

55. Plaintiff asserts claims for breach of contract on behalf of the Class defined as follows:

9

>All insureds who, under a motor-vehicle policy issued by GEICO in the State of Kentucky with comprehensive and/or collision coverage, submitted a covered first-party physical damage claim, and whose claim was adjusted as a total loss and resulted in a total loss payment from GEICO during the period of limitations through the date of class certification.

Plaintiff reserves the right to amend this class definition as additional facts are discovered and become known.

56. Excluded from the Class are all officers and employees of GEICO and its affiliates, parents, and subsidiaries; all persons who make a timely election to be excluded from the Class; government entities; and the judges to whom this case is assigned and their immediate family and court staff.

57. **Numerosity:** The Class is so numerous that joinder of all individual claims at issue is impracticable. It is believed that there are thousands of Kentucky residents whose claims resulted in a total loss payment from GEICO that did not include title transfer handling fees and/or license plate transfer fees during the class period. Thus, numerosity is established within the meaning of Rule 23(a)(1).

58. **Commonality:** There are common issues of law and fact as to:

>a. Whether the Policy requires GEICO to pay full ACV replacement costs, including title transfer handling fees on first-party total loss claims; and
>
>c. Whether GEICO breached the Policy by failing to pay full ACV replacement costs, including title transfer handling fees and/or license plate transfer fees.

Thus, commonality is established within the meaning of Rule 23(a)(2).

59. **Typicality:** Plaintiff's claims and defenses are typical of the claims of all Class Members. GEICO injured Plaintiff and Class Members through uniform misconduct and Plaintiff's legal claims arise from the same core practice—GEICO's failure to pay full ACV,

10

including title transfer handling fees and/or license plate transfer fees, on first-party total loss claims under Kentucky physical damage policies. Plaintiff suffered the same harm as all Class Members: damages for unpaid replacement costs required under the Policy. Plaintiff's interests are identical to those of the other Class Members, within the meaning of Rule 23(a)(3).

60. **Adequacy:** Plaintiff will fairly and adequately represent and protect the interests of the Class because:

    a. Plaintiff has retained counsel experienced in litigating consumer class actions and complex litigation, and counsel will adequately represent the interests of the Class;

    b. Plaintiff and his counsel are aware of no conflicts of interest between Plaintiff and absent Class Members or otherwise;

    c. Plaintiff and his counsel have adequate financial resources to assure that the interests of the Class will not be harmed; and

    d. Plaintiff is knowledgeable concerning the subject matter of this action and will assist counsel in the prosecution of this litigation and protection of the putative Class Members' interests in this regard.

Thus, adequacy is established within the meaning of Rule 23(a)(4).

61. A class action provides a fair and efficient method for adjudicating this controversy and is superior to the other available methods of adjudication in that:

    a. Neither the size of the Class nor any other factor, make it likely that difficulties will be encountered in the management of this Class as a class action;

    b. The prosecution of separate actions by individual Class Members, or the individual joinders of all Class Members in this action, is impracticable and

        would create a massive and unnecessary burden on the resources of the courts and could result in inconsistent adjudication, while a single class action can determine, with judicial economy, the rights of each member of the Class;

    c.    Because of the disparity of resources available to Defendant versus those available to individual Class Members, prosecution of separate actions would work a financial hardship on many Class Members;

    d.    The conduct of this action as a class action conserves the resources of the parties and the court system and protects the rights of each Class Member and meets all due process requirements as to fairness to all parties. A class action is also superior to the maintenance of these claims on a claim by claim basis when all actions arise out of the same circumstances and course of conduct; and

    e.    Because the claims may be small or nominal in nature, individual actions will be rendered financially impractical if not impossible.

## COUNT I
## CLAIM FOR BREACH OF CONTRACT

62. The allegations in the preceding paragraphs are hereby incorporated by reference.

63. Plaintiff and all Class Members were covered insureds under their Policies with GEICO and complied with all Policy terms relating to their total loss claims.

64. Each Policy and Class Member made a claim under their Policy that GEICO determined to be a first-party total loss covered claim.

65. The Policy required that GEICO pay Plaintiff and all Class Members for the "loss" to their insured vehicles, which GEICO defined as "direct and accidental loss of or damage to" the vehicle.

12

66. However, if the value of the "loss" exceeds the value of the damage, referred to as a "total loss," GEICO is entitled, under the limitation of liability provision, to elect to pay the "actual cash value" of the vehicle.

67. If GEICO does not pay the full value of the "loss," and GEICO instead elects to pay ACV, it is obligated to pay the full amount of ACV.

68. GEICO chose to specifically define ACV as "replacement cost" of the insured vehicle, less depreciation or betterment.

69. GEICO determined that Plaintiff's and all Class Members' vehicles experienced a total loss.

70. GEICO elected to pay Plaintiff and Class Members ACV instead of paying the higher cost of loss or repair or replace.

71. By electing to pay ACV, GEICO was required under its Policy, to pay reasonably necessary replacement costs, which were reasonably likely to be incurred on the replacement of their total loss vehicles. Such costs include sales tax, title and registration fees, including title transfer handling fees and license plate transfer fees, on total losses because such taxes and fees are reasonably necessary replacement costs for total loss insured vehicles.

72. GEICO failed to pay Plaintiff and all Class Members full ACV replacement costs, including all sales tax title and/or title transfer and license plate transfer fees owed under the Policy on their first-party total loss claims.

73. GEICO's failure to pay Plaintiff and Class Members full ACV replacement costs including sales tax, title transfer handling fees and/or license plate transfer fees constitutes a breach of GEICO's Policies.

74. As a result of GEICO's breaches, Plaintiff and Class Members have suffered damages and are entitled, under their Policies, to sums representing all ACV replacement costs,

13

including but not limited to unpaid sales tax on the value of the total loss vehicle at the time of loss, unpaid title transfer handling fees and license plate transfer fees, as well as prejudgment and post judgment interest, attorneys' fees, and all costs and expenses of litigation.

75. Plaintiff and the Class Members are entitled to an award of attorneys' fees and costs under Kentucky law and all contractual and statutory provisions allowing for recovery of attorneys' fees.

## COUNT II
## VIOLATION OF KENTUCKY'S UNFAIR CLAIMS SETTLEMENT PRACTICES ACT
### (K.R.S. Stat § 304.12-230)

76. The allegations in the preceding paragraphs are hereby incorporated by reference.

77. K.R.S. Stat § 304.12-230 requires an insurer to act with good faith and fair dealing, to adjust claims fairly and promptly, and to make a reasonable effort to settle claims with the insured.

78. GEICO violated K.R.S. § 304.12-230 by failing to pay Plaintiff and all Class Members full ACV after determining that the vehicles sustained total losses.

79. At the time GEICO declared the vehicles total losses, GEICO knew that its Policies obligated it to pay full replacement costs of the vehicles, less depreciation.

80. GEICO advertised on its website that ACV meant replacement cost less depreciation. https://www.geico.com/information/insurance-terms/ (last visited January 14, 2021). This definition was confirmed by specific language in its auto Policies, written throughout the State of Kentucky.

81. GEICO further knew that, in Kentucky, it is required by the Department of Insurance to include all applicable taxes and fees incident to the transfer of ownership of a vehicle, including all Title and Registration Fees. 806 KAR 12:095.

14

82. Despite this knowledge, and despite its advertised promise, GEICO (as a general business practice) underpays all insureds after a total loss by failing to fully pay the cost of Title and Registration fees for no purpose other than to profit off of the misfortune of its insureds.

83. GEICO has acted in bad faith and caused Plaintiff and Class Members unnecessary trouble and expense by failing to comply with the clear requirements of the Policies and Kentucky law.

84. There is no legal justification for GEICO's conduct in failing to pay full ACV replacement costs, including Title and Registration Fees, on Kentucky first-party total loss claims.

85. Plaintiff and Class Members are entitled to and expressly pray for, expenses of litigation, including all attorneys' fees and costs pursuant to K.R.S. Stat § 304.12-230.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually, and on behalf of the Class including all other persons similarly situated, prays for judgment in favor of Plaintiff and the Class, and against Defendant, GEICO INSURANCE as follows:

1. For an Order certifying this action as a Class Action on behalf of the Class described above;

2. For an award of compensatory damages for the Class in amounts owed by Defendant;

3. For all other damages according to proof;

4. For an award of attorneys' fees and costs pursuant to K.R.S. Stat § 304.12-230 and other applicable law;

5. For costs of suit incurred herein;

6. For prejudgment and post judgment interests on any amounts awarded; and

7. For other and further forms of relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated: May 7, 2021                    Respectfully submitted,

/s/ Ronald E. Johnson, Jr.
Ronald Johnson
**HENDY JOHNSON VAUGHN EMERY**
600 West Main Street, Suite 100
Louisville, KY 40202
Tel: 888-606-5297
E-mail: rjohnson@justicestartshere.com

**NORMAND PLLC**
Amy L. Judkins
Florida Bar No.: 125046
Edmund A. Normand, Esq.
Florida Bar No.: 865590
Jacob L. Phillips, Esq.
Florida Bar No.: 120130
3165 McCrory Place, Ste. 175
Orlando, FL 32803
Tel: 407-603-6031
E-mail: ed@normandpllc.com
E-mail: jacob.phillips@normandpllc.com
E-mail: amy.judkins@normandpllc.com
E-mail: ean@normandpllc.com

*Counsels for Plaintiff*